# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| GAMCO ASSET MANAGEMENT, INC., on behalf of itself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| MARK MCCOLLUM, CHRISTOPH BAUSCH, KARL BLANCHARD, WILLIAM MACAULAY, MOHAME AWAD, ROXANNE DECYK, JOHN GASS, EMYR PARRY, FRANCIS KALMAN, DAVID KING, GUILLERMO ORTIZ, ANGELA MINAS, BERNARD DUROC-DANNER, KRISHNA SHIVRAM, DAVID BUTTERS, ROBERT MOSES, ROBERT RAYNES and J.P. MORGAN SECURITIES LLC, | |
| Defendants. | |

## <u>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................... 2

II.    JURISDICTION AND VENUE ................................................................... 7

III.   PARTIES ....................................................................................................... 8

    A.     Plaintiff .............................................................................................. 8

    B.     Management Defendants .................................................................... 8

    C.     Board Defendants............................................................................. 10

    D.     2016 Director Defendants ................................................................ 12

    E.     Underwriter Defendant .................................................................... 13

IV.    FACTUAL BACKGROUND..................................................................... 13

    A.     Weatherford Purportedly Moves on from its Decline and
        Accounting Problems to Enter a New Era of "Recovery"................. 13

    B.     Weatherford Issues Additional Equity Using a Misleading
        Registration Statement..................................................................... 15

    C.     Management Continues to Tout Weatherford's Transformation
        Plan .................................................................................................. 16

    D.     McCollum and Weatherford's New Management Team Continue
        to Mislead Investors While Detailing a Purported $1 Billion
        Transformation Plan......................................................................... 18

    E.     Despite a Disastrous Quarter Defendants Continue to Tell
        Investors the Plan is "On Track" ..................................................... 23

    F.     Defendants Stop Touting the Transformation and Instead File for
        Bankruptcy and A Lucrative Management Incentive Plan................. 26

V.     MISLEADING STATEMENTS AND OMISSIONS ................................... 28

    A.     Defendant's False and Misleading Statements During 2016................ 28

    B.     Defendant's False and Misleading Statements During 2017................ 30

    C.     Defendant's False and Misleading Statements During 2018................ 32

    D.     Defendant's False and Misleading Statements During 2019................ 35

VI.    ADDITIONAL ALLEGATIONS OF SCIENTER.................................... 36

VII.   PRESUMPTION OF RELIANCE ............................................................. 37

i

VIII.  INAPPLICABILITY OF THE STATUTORY SAFE HARBOR AND
       BESPEAKS CAUTION DOCTRINE ................................................................. 38

IX.    CLASS ACTION ALLEGATIONS ................................................................. 39

COUNT I For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
       Promulgated Thereunder Against the Management Defendants....................................... 40

COUNT II For Violations of Section 20(a) of the  Exchange Act Against the
       Management Defendants ................................................................. 42

COUNT III For Violations of Section 20(a) of the Exchange Act Against Duroc-
       Danner, Shivram and Bausch................................................................. 42

COUNT IV Against the Director Defendants For Violations of  Section 11 of the
       Securities Act Against Defendant Shivram, Board Defendants, 2016
       Director Defendants and J.P. Morgan................................................................. 43

COUNT V Against Duroc-Danner, Shivram, and Bausch  For Violations of
       Section 15 of the Securities Act................................................................. 45

PRAYER FOR RELIEF ................................................................. 46

JURY DEMAND ................................................................. 47

Plaintiff, GAMCO Asset Management, Inc. ("GAMCO" or "Plaintiff"), brings this class action (the "Action") for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") on behalf of itself and all persons or entities (the "Class") that purchased or otherwise acquired common stock of Weatherford International plc ("Weatherford" or the "Company"):

(a)     During the period October 26, 2016 through May 10, 2019, inclusive (the "Class Period"); or

(b)     Pursuant or traceable to Weatherford's secondary offering of common stock that closed on or about November 21, 2016 (the "Equity Offering"), underwritten by defendant J.P. Morgan Securities LLC ("J.P. Morgan").

Plaintiff's allegations are based upon personal knowledge as to itself and its own acts and upon information and belief as to all other matters. Plaintiff's information and belief is based on an investigation conducted by and through Plaintiff's counsel, which included, among other things, a review of Weatherford's filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, investor presentations, earnings calls, analyst research and media reports about the Company. The allegations are also based on the filings in the bankruptcy proceedings concerning Weatherford pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") captioned *In re: Weatherford International plc, et al.*, 19-33694 (DRS) (the "Chapter 11 Proceedings").

Counsel's investigation into the facts supporting the claims alleged herein continues, and many of the relevant facts are known only by (as defined below) the Management Defendants, Board Defendants, 2016 Director Defendants, and Defendant J.P. Morgan (collectively, the "Defendants") or are exclusively within Defendants' custody or control. Plaintiff believes that substantial additional evidentiary support for the allegations set forth herein will be uncovered after a reasonable opportunity for further investigation or discovery.

## I.     INTRODUCTION

1.      This case arises from a pattern of misrepresentations and omissions by Weatherford and the Management Defendants, Board Defendants and 2016 Director Defendants (the "Individual Defendants"), starting in October 2016 and ending when the Company announced in May 2019 that it intended to initiate the Chapter 11 Proceedings, designed to prop up the stock price of the failing Company, an international oil services giant.   These misrepresentations and omissions followed a narrative declaring that Weatherford was entering a new era of "recovery" and had developed a "Transformation Plan" that would purportedly achieve $1.0 billion in incremental EBITDA, allow the Company to manage its considerable debt, and return the Company to profitability.

2.      As detailed herein, this scheme, and the material misstatements and omissions that facilitated it, allowed the Company, through certain of the Management Defendants and the 2016 Director Defendants, to complete a $456 million Equity Offering to Class members in November 2016.   It also allowed Weatherford to stay afloat until management was able to negotiate a sweetheart deal with creditors in advance of Weatherford's July 1, 2019 Chapter 11 Proceedings under which management will receive up to 5% ownership in the reorganized company ("NewCo"), while existing equity holders (including Class members) will receive less than 1%.

3.      The scheme was thematically simple.   The Company and Management Defendants repeatedly touted Weatherford's financial prospects based on its purported recovery and ostensible Transformation Plan, when, in reality, the Company – which as of the end of the third quarter of 2016 had $6.9 billion in debt – had virtually no prospects of managing its debt or continuing as a going concern.

4.      For example, on October 26, 2016 (the first day of the Class Period), then-Chief Executive Officer ("CEO") Defendant Bernard Duroc-Danner stated that "Q3 marked an end and a beginning" for Weatherford and that the Company is "in recovery mode[.]"  Two weeks later, on November 9, 2016, Duroc-Danner similarly assured investors the Company's problems were resolved and that he saw "no remote possibility" that the Company would not be able to manage its debt.  One week later, on November 16, 2016, Weatherford commenced the Equity Offering, foisting more than $450 million in inflated stock on Class members based on the false narrative of the Company's "recovery" and "Transformation."

5.      In early 2017, Defendant Krishna Shivram, Weatherford's CFO since 2013 and interim CEO after Duroc-Danner left the Company, doubled-down on the Company's purported Transformation, telling investors that "Weatherford is back," and had "not only survived" the industry down cycle but "transformed the company internally and positioned it well for the multiyear upcycle that is just about beginning."   In this regard, Defendant Shivram assured investors that Weatherford's "financial runway, including covenant management, is now clear for the next few years."

6.      However, as set forth herein, it is now clear that, by the date of these and later statements, the Management Defendants knew, or should have known, among other things, that:

- Weatherford's debt would eventually necessitate a massive restructuring;

- The best the Transformation Plan could hope to achieve would be to postpone the Company's insolvency; and

- Filing for Chapter 11 protection would ultimately be necessary absent substantial concessions by Weatherford's creditors.

7.      Despite these foregoing facts that Management Defendants knew or should have known, and Weatherford's progressively worsening debt (the Company's debt reached $7.4

3

billion by year-end 2016, $7.5 billion by year-end 2017, and $7.6 billion by year-end 2018), the misleading statements concerning the Transformation Plan continued into 2018.  For example, during a July 2018 call to discuss Weatherford's second quarter 2018 results, Defendant Christoph Bausch, Weatherford's Chief Financial Officer ("CFO"), stated the Transformation Plan was "continuing to gain momentum."  Defendant Mark A. McCollum, the Company's current CEO, likewise stated that the plan is "in full force" and that the Company now has "Tangible evidence of its effects on our bottom line."

8.      In fact, the Management Defendants' scheme to mislead investors about the Transformation Plan continued even after the Company was forced to announce poor results for third-quarter 2018.  During the October 2018 earnings call, Defendant McCollum stated that the Transformation Plan was still "ongoing" and had "positive trends."  Defendant McCollum further characterized the news as mere "bumps in the road."  As before, the Management Defendants made these statements in 2018 despite the fact they knew, or should have known, among other things, that:  (i) Weatherford's debt would necessitate massive restructuring; (ii) the Transformation Plan could only hope to postpone the Company's insolvency; and (iii) Chapter 11 protection would ultimately be necessary absent substantial concessions by Weatherford's creditors.

9.      Nevertheless, the scheme continued into 2019, despite the Management and Board Defendants' realization the Company would not make it through year-end.  For example, during a February 2019 earnings call, Defendant McCollum told investors that the Transformation Plan remained "on track" and stated he does not "waste a lot of time thinking or planning" about bankruptcy.  However, by the time of Defendant McCollum's statements, Weatherford had already hired bankruptcy advisors and was in the process of preparing to

commence the Chapter 11 Proceedings.

10.     Even more recently, on April 30, 2019, while Weatherford's bankruptcy plan was in the final stages of being secretly negotiated, the Board Defendants took affirmative steps to obfuscate the upcoming bankruptcy filing by proposing a reverse stock split, which the Company ostensibly intended to put to a shareholder vote during the annual meeting scheduled for June 2019.  But just ten days later, on May 10, 2019, the Company instead announced it intended to commence the Chapter 11 Proceedings, which it ultimately did on July 1, 2019.

11.     Significantly, efforts by the Individual Defendants to prop up Weatherford's stock price were demonstrably successful until Weatherford's true condition was finally revealed. Despite Weatherford sustaining losses in every quarter beginning with fourth-quarter 2014, Weatherford was able to complete the Equity Offering, issuing 84.5 million shares and generating over $450 million from unsuspecting investors.  Even by February 2019 – just five months before Weatherford commenced the Chapter 11 Proceedings – the Company's stock was still trading near $1 per share giving it a market capitalization of nearly $1 billion.

*        *        *

12.     The truth about Weatherford's dire financial condition was revealed through a series of partial disclosures, which caused hundreds of millions in damages to Class members. For example, on October 29, 2018, prior to the market open, Weatherford reported a loss of $199 million, or 20 cents per share, for the third quarter of 2018.  This partially disclosed the truth – *i.e.*, that the recovery, including the Transformation Plan, was in doubt and that the Company may be headed towards bankruptcy.  The announcement caused Weatherford's stock price to fall more than 22% from $1.98 per share at close on Friday, October 26, 2018, to $1.54 per share at close on Monday, October 29, 2018.  Weatherford's stock price further fell to $1.26 per share at

close on October 30, 2018 as the market further digested the troubling news.

13.     Despite the highly disappointing earnings announcement, Defendant McCollum nevertheless reassured investors by characterizing the poor results as mere "bumps in the road" and continued to tout Weatherford's Transformation Plan.  Indeed, during the next earnings call, in February 2019, McCollum stated that the Transformation Plan continued to be "on track."

14.     The truth was fully disclosed on the evening of May 10, 2019, when Weatherford announced it expected to file for Chapter 11 bankruptcy protection.  As part of the disclosed restructuring plan (the "RSA"), the Company revealed that existing equity holders would only receive a combined 1% equity stake in the post-bankruptcy NewCo, as well as warrants.  This was despite the fact that merely 10 days prior the Company announced the reverse stock split purportedly to be voted on in June 2019.  On the next trading day, Weatherford's common stock price dropped over 85% from its previous close of $0.36 per share on May 10, 2019, to $0.05 per share at close on May 13, 2019.  Weatherford's common stock was soon delisted, and the Company commenced the Chapter 11 Proceedings on July 1, 2019.

15.     The RSA with Weatherford's creditors set forth in the Company's proposed plan of reorganization (the "Chapter 11 Plan") gives management up to 5% ownership of NewCo, compared to the approximately 0.37% they owned prior to the Chapter 11 Proceedings.  Even more troubling, existing Weatherford shareholders – including shareholders who purchased Weatherford common stock in the Equity Offering and during the Class Period and suffered hundreds of millions in losses as a result of the scheme – will receive only up to 1% of NewCo. Put another way, management's scheme caused hopeful shareholders to invest in the Company due to the potential of the Transformation Plan, and now, by virtue of the agreement with creditors, shareholder interests will be virtually wiped out while management and the Director

Defendants are potentially enriched with up to 5% of the newly-healthy company.

16.     This action seeks to recover damages pursuant to:  (i) Sections 10(b) and 20(a) of the Exchange Act on behalf of all persons or entities that purchased or otherwise acquired Weatherford securities from October 26, 2016 through May 10, 2019, inclusive, and were damaged thereby; and (ii) Section 20(a) of the Exchange Act and Sections 11 and 15 of the Securities Act on behalf of all persons or entities that purchased Weatherford shares directly from or traceable to the Equity Offering.

## II.     JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Section 22 of the Securities Act, 15 U.S.C. § 77v.  In addition, because this is a civil action arising under the laws of the United States, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  Weatherford has its U.S. headquarters in Houston, Texas, and many of the acts and transactions that constitute violations of law complained of herein, including the dissemination to the public of untrue statements of material fact, occurred in this District.  Moreover, on July 1, 2019, Weatherford filed for bankruptcy protection in this District.

19.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.  Each Individual Defendant was a Weatherford senior executive and/or member of the Weatherford Board of Directors during the

Class Period.

20.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications and the facilities of a national securities exchange.

## III.    PARTIES

### A.    Plaintiff

21.     Plaintiff GAMCO Asset Management, Inc. is an investment manager located in Rye, New York.  GAMCO provides services to investment companies and pooled investment vehicles, and manages equity, fixed income and balanced mutual funds.  GAMCO purchased Weatherford common stock during the Class Period and was damaged thereby.  GAMCO also purchased Weatherford shares pursuant to the Equity Offering.

### B.    Management Defendants

22.     Defendant Bernard Duroc-Danner ("Duroc-Danner") is the former Chairman and CEO of Weatherford.  Defendant Duroc-Danner left the Company in November 2016.  In addition to making misleading statements on earnings calls and interviews as discussed herein, Defendant Duroc-Danner signed Weatherford's Third Quarter Form 10-Q, filed on October 28, 2016, which incorporated by reference materially false and misleading statements and omissions of material facts as detailed below.

23.     Defendant Krishna Shivram ("Shivram") was the CFO of Weatherford from November 2013 until December 2016.  Defendant Shivram served as Weatherford CEO from November 2016 to March 2017.  In addition to making misstatements on earnings calls as discussed herein, Defendant Shivram signed Weatherford's Third Quarter 2016 Form 10-Q, dated October 26, 2016, Weatherford's Form 10-K, dated February 15, 2017, and the Offering Documents, each of which contained materially false and misleading statements and omissions

8

of material facts as detailed below.

24.     Defendant Mark McCollum ("McCollum") is the current President and CEO of Weatherford.  Prior to joining Weatherford in March 2017, Defendant McCollum served as the Executive Vice President and Chief Financial Officer of Halliburton.  If Defendant McCollum is retained as management of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant McCollum's *pro rata* share based on his current ownership would be up to 1.09% – a 14-times increase in ownership.  In addition to making misstatements on earnings calls as discussed herein, Defendant McCollum signed Weatherford's 2017 Form 10-K, dated February 14, 2018, and Weatherford's 2018 Form 10-K, dated February 15, 2019, each of which contained materially false and misleading statements and omissions of material facts as detailed below.

25.     Defendant Christoph Bausch ("Bausch") is the current Executive Vice President and Chief Financial Officer ("CFO") of Weatherford.  Defendant Bausch became the CFO in December 2016.  Defendant Bausch joined Weatherford in May 2016 as the Controller, Product Lines.  If Defendant Bausch is retained as management of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant Bausch's *pro rata* share based on his current ownership would be up to 0.69%.  In addition to making misstatements on earnings calls as discussed herein, Defendant Bausch signed Weatherford's 2016 Form 10-K, dated February 15, 2017, Weatherford's 2017 Form 10-K, dated February 14, 2018, and Weatherford's 2019 Form 10-K, dated February 15, 2019, each of which contained materially false and misleading statements and omissions of material facts as described below. Defendant Bausch also signed Weatherford's Forms 10-Qs, dated April 28, 2017, August 1, 2017, November 1, 2017, May 2, 2018, August 9, 2018 and November 2, 2018, each of which

incorporated by reference materially false and misleading statements as detailed below.

26.     Defendant Karl Blanchard ("Blanchard") is the Executive Vice President and Chief Operating Officers ("COO") of Weatherford.  Defendant Blanchard joined Weatherford in August 2017.  If Defendant Blanchard is retained as management of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant Blanchard's *pro rata* share based on his current ownership would be up to 0.29%.

27.     Together, Defendants Duroc-Danner, McCollum, Bausch and Blanchard are referred to herein as the "Management Defendants."

**C.     Board Defendants**

28.     Defendant William Macaulay ("Macaulay") is the Executive Chairman of Weatherford's Board of Directors.  If Defendant Macaulay is retained as a director of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant Macaulay's *pro rata* share based on his current ownership would be up to 0.55%.

29.     Defendant Mohamed Awad ("Awad") is a member of Weatherford's Board of Directors.  If Defendant Awad is retained as a director of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant Awad's *pro rata* share based on his current ownership would be up to 0.20%.

30.     Defendant Roxanne Decyk ("Decyk") is a member of Weatherford's Board of Directors.  If Defendant Decyk is retained as a director of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant Decyk's *pro rata* share based on his current ownership would be up to 0.14%.

31.     Defendant John Gass ("Gass") is a member of Weatherford's Board of Directors. If Defendant Gass is retained as a director of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant Gass's *pro rata* share based on

10

his current ownership would be up to 0.24%.

32.    Defendant Emyr Parry ("Parry") is a member of Weatherford's Board of Directors.  If Defendant Parry is retained as a director of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant Parry's *pro rata* share based on his current ownership would be up to 0.28%.

33.    Defendant Francis Kalman ("Kalman") is a member of Weatherford's Board of Directors.  If Defendant Kalman is retained as a director of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant Kalman's *pro rata* share based on his current ownership would be up to 0.27%.

34.    Defendant David King ("King") is a member of Weatherford's Board of Directors.  If Defendant King is retained as a director of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant King's *pro rata* share based on his current ownership would be up to 0.14%.

35.    Defendant Dr. Guillermo Ortiz ("Ortiz") is a member of Weatherford's Board of Directors.  If Defendant Ortiz is retained as a director of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant Ortiz's *pro rata* share based on his current ownership would be up to 0.30%.

36.    Defendant Angela Minas ("Minas") is a member of Weatherford's Board of directors.  If Defendant Minas is retained as a director of NewCo and the 5% maximum ownership is distributed as part of the Management Incentive Plan, Defendant Minas's *pro rata* share based on her current ownership would be up to 0.15%.

37.    Together, Defendants McCollum, Macaulay, Awad, Decyk, Gass, Parry, Kalman, King, Ortiz and Minas are referred to herein as the "Board Defendants."  Defendant McCollum

11

is both an Executive Defendant and a Board Defendant.

38.     As indicated, if the Management Defendants who are currently with the Company and the Board Defendants are retained and receive the maximum under the Management Incentive Plan based on their *pro rata* current ownership, their ownership in NewCo may be massively increased:

### INDIVIDUAL DEFENDANTS' CURRENT OWNERSHIP AND PROSPECTIVE OWNERSHIP OF NEWCO UNDER THE MANAGEMENT INCENTIVE PLAN

#### CURRENT MANAGEMENT

| | | Current Ownership | Prospective Ownership[1] |
|---|---|---|---|
| Mark McCollum | Director/President and Chief Executive Officer | 0.08% | 1.09% |
| Christoph Bausch | Executive Vice President and Chief Financial Officer | 0.05% | 0.69% |
| Karl Blanchard | Executive Vice President and Chief Operating Officer | 0.02% | 0.29% |

#### CURRENT DIRECTORS

| | | Current Ownership | Prospective Ownership |
|---|---|---|---|
| William Macaulay | Director | 0.04% | 0.55% |
| Mohamed Awad | Director | 0.01% | 0.20% |
| Roxanne Decyk | Director | 0.01% | 0.14% |
| John Gass | Director | 0.02% | 0.24% |
| Emyr Parry | Director | 0.02% | 0.28% |
| Francis Kalman | Director | 0.02% | 0.27% |
| David King | Director | 0.01% | 0.14% |
| Guilermo Ortiz | Director | 0.02% | 0.30% |
| Angela Minas | Director | 0.01% | 0.15% |

### D.     2016 Director Defendants

39.     Defendant David Butters ("Butters") was a member of the Weatherford Board of Directors at the time of the Equity Offering.

40.     Defendant Robert Moses ("Moses") was a member of the Weatherford Board of

---

[1] As set forth in paragraph 97 below, the MIP will purportedly be distributed to up to "approximately 2,000 employees rather than just management."

Directors at the time of the Equity Offering.

41.     Defendant Robert Raynes ("Raynes") was a member of the Weatherford Board of Directors at the time of the Equity Offering.

42.     Defendant Butters, Moses, Raynes, Awad, Gass, Kalman, Macaulay, Ortiz, and Parry are referred to herein as the "2016 Director Defendants."   Some of the 2016 Director Defendants are also Board Defendants.

**E.     Underwriter Defendant**

43.     Defendant J.P. Morgan Securities LLC is an investment management company headquartered in New York, New York.   J.P. Morgan served as the sole underwriter for Weatherford's Equity Offering.

## IV.   FACTUAL BACKGROUND

### A.     Weatherford Purportedly Moves on from its Decline and Accounting Problems to Enter a New Era of "Recovery"

44.      Weatherford is one of the world's leading providers of equipment and services used in the drilling, evaluation, completion, production and intervention of oil and natural gas wells.  Many of its businesses, including those of its predecessor companies, have been operating for more than 50 years.  Weatherford conducts operations in approximately 90 countries.

45.     From 2014 to 2016, Weatherford struggled financially as a result of both market conditions and company-specific problems.   For example, until the third quarter of 2016, Weatherford had sustained sequential revenue declines for seven consecutive quarters.  From the last trading day of 2014 to the last trading day of third-quarter 2016, Weatherford's stock price dropped from $11.45 per share to $5.62 per share.

46.     Weatherford was also impacted by a series of accounting problems concerning its financial statements between 2007 and 2012.  These problems caused the Company to restate its

13

financial statements on three separate occasions in 2011 and 2012. The litigation stemming from the restatements extended for several additional years. In 2015, the Company settled a securities fraud class action concerning the restatements for $120 million, and on October 18, 2016 Weatherford agreed to a $140 million settlement with the SEC concerning the accounting issues.

47.     The Class Period begins on October 26, 2016, when Weatherford released its third quarter 2016 financial results. In connection with the announcement, then-CEO Duroc-Danner stated that "Q3 marked an end and a beginning" for Weatherford. He explained that not only had the Company put its accounting problems behind it, but operationally "Q3 marked the end of the decline for all regions" and that the Company is "in recovery mode."

48.     During the call, Defendant Duroc-Danner explained in detail the Company's turnaround and ongoing efforts to reduce costs. For example, after characterizing the quarter's financial results "as the first sign of a turnaround," Duroc-Danner explained that Weatherford had cut "almost 44%[] of our payroll worldwide, substantially curtailed layers of management, upgraded in-depth operating management and restructured our supply chains and shut down many inefficient facilities worldwide." Duroc-Danner elaborated that these cuts resulted in a reduction of "about $4.5 billion in variable costs and about $1 billion in fixed costs" and that these "cuts in fixed costs are permanent and sustainable" and would remain stable even if the Company's revenues were to double.

49.     While Weatherford's disappointing third quarter financial results caused its stock price to fall from $5.34 per share at close on October 27, 2017 to $5.17 per share at close on October 28, 2017, Duroc-Danner's misleading statements about the Company's ongoing "recovery" and turnaround stopped the stock price from falling further. Indeed, as alleged herein, Duroc-Danner's statements were false and misleading when made and omitted material

facts about Weatherford's true financial condition.  At the time, Defendants knew, or should have known,  that Weatherford had little, if any, chance of recovering and avoiding bankruptcy (where its common stock would have *de minimis* value).  As the evidence regarding Weatherford's inevitable bankruptcy filing became even more clear, the Management Defendants continued to mislead investors by advertising various iterations of the Company's comeback and transformation plans.

50.     Defendant Duroc-Danner announced he was leaving Weatherford on November 9, 2016.  In an interview on the same day, he stated his departure from the Company was "amicable."  Duroc-Danner further stated during the interview that the accounting problems that have dogged Weatherford in recent years have been fully resolved.  Although the Company remained highly indebted, Duroc-Danner stated that he saw "no remote possibility" that Weatherford wouldn't be able to manage its debt.

**B.     Weatherford Issues Additional Equity Using a Misleading Registration Statement**

51.     In a purported effort to accelerate its "transformation" and pay off its mounting debt, on November 16, 2016, Weatherford filed with the SEC a Preliminary Prospectus Supplement to issue 84,500,000 ordinary shares and a Post-Effective Amendment to an Automatic Shelf Registration Statement (the "Offering Documents").

52.     The Offering Documents were materially false and misleading when made and omitted material facts about Weatherford's financial condition.  Despite listing and detailing dozens of "Risks relating to our ordinary shares," nowhere did the Company indicate that its purported transformation was highly unlikely to succeed in saving the Company, and that as a result Weatherford would inevitably file for bankruptcy protection.  For example, the Offering Documents warned generally that "the price of our ordinary shares could be subject to wide

fluctuations," but the Company failed to mention that it had little, if any, chance of managing its significant debt and retaining any meaningful value for equity holders.

53.     The Offering Documents also incorporated by reference Weatherford's Form 10-K for the fiscal year ended December 31, 2015, as filed with the SEC on February 16, 2016.  The 2015 Form 10-K included a list of "risks and uncertainties" that "may cause actual results to be materially different from projected results," which included "our high level of indebtedness and our ability to service our indebtedness."

54.     It was misleading for Defendants not to correct the statement in Weatherford's 2015 Form 10-K that the Company's debt merely "may" impact its results, when at the time Defendants knew, or should have known, that the Company's debt was significantly impacting the Company and the various recovery efforts had little, if any, chance of preventing the Company from filing for bankruptcy because of its significant debts.

55.     The Amendment to the Registration Statement was signed by Defendant Shivram, and by the 2016 Director Defendants (Defendants Awad, Butters, Gass, Kalman, Macaulay, Moses, Ortiz, Parry, and Raynes).

56.     The Equity Offering closed on November 21, 2016.  In total, Weatherford issued 84,500,00 new shares at $5.40 per share, a 5% premium to the closing price of the ordinary shares on November 15, 2016 (the day before Weatherford announced the offering). Weatherford reported that initial gross proceeds were $456 million.  Defendant J.P. Morgan was the sole placement agent for the offering.

### C.     Management Continues to Tout Weatherford's Transformation Plan

57.     Following Duroc-Danner's departure, CFO Shivram assumed the role of CEO. On Weatherford's Fourth Quarter 2016 earnings call on February 2, 2017, Shivram followed in

Duroc-Danner's footsteps of misleading investors regarding the Company's recovery.  Shivram boldly started the call stating "[l]adies and gentlemen, Weatherford is back."  Shivram told investors that Weatherford has "not only survived" the industry down cycle, but "transformed the company internally and positioned it well for the multiyear upcycle that is just about beginning."

58.   Also on the call, Defendant Shivram continued to assure investors about the Company's financial future by citing the Company's reduction of costs by an annualized $601 million and by stating that Weatherford's "financial runway, including covenant management, is now clear for the next few years."

59.    Investors reacted positively to Shivram's assurances.  Following the earnings call, Weatherford's stock price increased over 10% (from $5.18 per share at close on February 1, 2017, the day before the call, to $5.77 per share at close on February 2, 2017).  Analysts on the call also reacted positively, calling the improvements and ongoing initiatives a "very strong game plan" and "very compelling."

60.   On February 14, 2017, Weatherford filed its 2016 Annual Report on Form 10-K. The 2016 Form 10-K was signed by Defendants Shivram, Bausch, Awad, Butters, Gass, Kalman, Macaulay, Moses, Ortiz, Parry and Raynes.

61.   In the 2016 Form 10-K, Weatherford and the Management Defendants listed numerous "Risk Factors," including that "[o]ur indebtedness and liabilities could limit cash flow available for our operations, expose us to risks that could adversely affect our business, financial condition and results of operations and impair our ability to satisfy our obligations under the notes."  It was misleading for the Management Defendants to issue a warning that Weatherford's indebtedness merely *could* have these adverse causes when the Management Defendants already knew, or should have known, that Weatherford's purported "recovery" was inadequate and that

the Company would eventually be forced to file for bankruptcy.

     **D.**     **McCollum and Weatherford's New Management Team Continue to Mislead Investors While Detailing a Purported $1 Billion Transformation Plan**

     62.     As part of the purported transformation, the Board Defendants brought in new management to oversee the Company.  First, on December 16, 2016, Weatherford named Defendant Christoph Bausch as Executive Vice President and Chief Financial Officer.  Bausch had worked at Weatherford since May 2016 as Controller, Product Lines.

     63.     On April 28, 2017, Weatherford named Mark McCollum as Chairman and CEO.  Defendant McCollum was formerly the CFO at Halliburton, one of Weatherford's primary competitors.  For his role as CEO of Weatherford, Defendant McCollum is paid a base salary of $1 million, cash bonuses between 60% and 180% of base, and long-term equity incentive awards of $6 million.

     64.     On August 21, 2017, another Halliburton alum, Defendant Karl Blanchard, was appointed as Executive Vice President and Chief Operating Officer of Weatherford.  Defendants McCollum and Blanchard had worked together at Halliburton, and when announcing Blanchard's appointment McCollum stated that "I have witnessed the effectiveness of his leadership first-hand."

     65.     Weatherford's new management continued the scheme to mislead investors by expanding the details regarding the Company's purported recovery.  Defendant McCollum attempted to mitigate the impact of the announcement of the Company's $256 net loss in the third quarter of 2017 by touting in a press release that Weatherford had "initiated a substantial transformation program targeting improvements in our operating results of approximately $1 billion."  Defendant McCollum further commented in the release that "[w]e are driving this plan on a timeline to achieve these savings over the next 18-24 months. Specific actions to

achieve $300 million in cost savings are already underway."

66.     During the related earnings call, McCollum stated that Weatherford has "a clear line of sight and specific action plans on $300 million" of the Transformation Plan, and is "actively working with advisors" to deliver on the $1 billion target.

67.     Investors reacted positively to the announcement of the Transformation Plan. Weatherford's stock price increased from closing at $3.47 per share on October 31, 2017, to $3.76 per share on November 1, 2017 following the announcement.  The Company's share price climbed to $4.11 per share at close on November 7, 2017, as analysts and investors continued to analyze the plan during the subsequent trading days.

68.     In furtherance of its Transformation Plan, in November 2017 Weatherford hired Morgan Stanley to sell certain business units.  As Weatherford had indicated during the initial announcement of the Transformation Plan, the Company intended to identify and divest business units "which are not critical to our strategy going forward" to streamline its operations and increase margins.  To this end, in January 2018 Weatherford sold its US pressure pumping and pump-down perforating assets to Schlumberger Ltd. for $430 million in cash.  In announcing the transaction with Schlumberger, Defendant McCollum stated "[t]he closing of this transaction represents another step on our path toward building a solid and strong company and unlocking the potential that exists within Weatherford."  McCollum continued that the "transaction delivers cash proceeds that enable our company to begin the deleveraging process and, coupled with our transformation plans, will lead to a leaner organization with lower debt and significantly higher profit margins."

69.     Weatherford held its fourth quarter 2017 earnings call on February 2, 2018. During the call, Defendants continued to discuss the Transformation Plan to revive Weatherford.

Defendant Bausch stated that the transformation plan "will lead to a leaner organization with lower debt and improved profit margins."

70.     Defendants were highly incentivized to continue to mislead investors about the Transformation Plan.  Keeping Weatherford's stock price high was critical as the Company desperately needed to refinance its debt.  When asked during the February 2, 2018 earnings call about refinancing and extending debt maturities, Defendant McCollum responded "we understand the importance of doing that and I think you're going to see us be opportunistic[.]" However, and likely more importantly, the next executives wanted to establish their roles and profit through the restructuring of the Company.

71.     On February 14, 2018, Weatherford filed its 2017 Annual Report on Form 10-K. The 2017 Form 10-K was signed by Defendants McCollum, Bausch, Awad, Butters, Decyk, Gass, Kalman, King, Macaulay, Moses, Ortiz and Parry.

72.     In the 2017 Form 10-K, Weatherford and the Management Defendants listed numerous "Risk Factors," including that "Our indebtedness and liabilities could limit cash flow available for our operations, expose us to risks that could adversely affect our business, financial condition and results of operations and impair our ability to satisfy our financial obligations."  It was misleading for the Management Defendants to issue a warning that Weatherford's indebtedness merely *could* have these adverse causes when the Management Defendants already knew, or should have known, that Weatherford's purported "recovery" was inadequate and that the Company would eventually be forced to file for bankruptcy.

73.     In connection with Weatherford's first quarter 2018 earnings announcement on April 24, 2018, Weatherford released an investor presentation revealing more details about the Transformation Plan.  The cornerstone of the plan was to achieve $1 billion in EBITA by year-

end 2019.  The plan also projected that the Company would break even in free cash flow in 2018 and have positive cash flow in 2019.   The Transformation Plan further sought to cut Weatherford's net debt ratio in half by the end of 2019.

74.     During the related earnings call, Defendant Bausch stated that "we are now in the implementation phase of our transformation, driving increased efficiency and effectiveness enabled by standard processes and clear accountability across the entire company. In the first quarter of 2018, estimated recurring benefits as a result of the transformation were $27 million or $108 million on an annualized basis."

75.     Defendant McCollum specifically addressed the $1 billion plan during the earnings call, stating that "something we've heard a lot over the last three months is where's the $1 billion coming from? How does it break down across the company?"  Defendant McCollum then pointed analysts to the investor presentation, and assured investors that $1 billion "is an achievable goal" and that the Company will "generate sustainable value."  McCollum continued that the "transformation work is starting to make an impact on our bottom line as well as our processes and our culture."

76.     Analysts reacted positively to Defendant McCollum's statements and the investor presentation detailing the Transformation Plan.  For example, Angie Sedita, an analyst from UBS, stated on the earnings call that "I think the slide deck is great.  It's a lot of detail that we would all like to see and very helpful[.]"  Investors also reacted positively, as Weatherford's stock price increased from $2.59 per share at closing on April 23, 2018, to $2.76 per share at closing on April 24, 2018.

77.     Through 2018, Weatherford and the Management Defendants continued with the purported Transformation Plan.  In July 2018, Weatherford announced that it was selling 31 land

drilling rigs and related drilling contracts to ADES International Holding Ltd. for $287.5 million. Weatherford would later sell additional rigs to ADES International in three separate additional deals that would close later in 2018 and 2019.

78.     In advance of Weatherford's next earnings announcement on July 27, 2018, the Company and Management Defendants again issued an investor presentation.  This presentation included an identical slide regarding the Transformation Plan, continuing to tout that the Company was on track to achieve $1 billion in EBITDA by year-end 2019.

79.     On the related earnings call, the Management Defendants continued to tout the success of its Transformation Plan.  For example, Defendant Bausch stated that that the Plan was "continu[ing] to gain momentum" and Defendant McCollum stated that the plan is "in full force" and that "we now have tangible evidence of its effects on our bottom line."  Defendant McCollum calculated that the "impacts of our transformation initiatives were 78% higher sequentially" and that the Company has reached "nearly 20% of our $1 billion target." McCollum concluded that "I remain confident that we'll achieve $1 billion in annualized recurring EBITDA improvements by year-end 2019 and cut the debt-to-EBITDA ratio in half by the end of the year 2018."

80.     On September 5, 2018, Defendant McCollum presented at the Barclays CEO Energy Power Conference.  During the presentation, McCollum said he expected Weatherford's full-year earnings before expenses to nearly double from last year and for the Company to begin generating free cash flow.  McCollum further indicated that Weatherford's EBITDA would grow around the mid-teens percent in the third quarter compared with the prior quarter.  Weatherford's stock reacted positively to McCollum's update, staying at about the same price despite Weatherford's closest rival Halliburton's stock price falling to a two-year low after warning of

an 8-cents to 10-cents per share earnings hit.

**E.    Despite a Disastrous Quarter Defendants Continue to Tell Investors the Plan is "On Track"**

81.    The Management Defendants' attempts to prop up Weatherford's stock price by misleading investors about the potential of its Transformation Plan partially lasted until the Fall of 2018.  On October 29, 2018 prior to the market open, Weatherford reported a loss of $199 million, or 20 cents per share, for the third quarter of 2018.  This disclosure was the first hint of the truth – *i.e.*, that the Transformation Plan may be unrealistic and insufficient to save Weatherford, and that the Company was headed for bankruptcy.  The October 29, 2018 disclosure caused Weatherford stock price to fall over 22% from $1.98 per share at close on Friday, October 26, 2018, to $1.54 per share at close on Monday, October 29, 2018. Weatherford's stock price further fell to $1.26 per share at close on October 30, 2018, as the market further digested the troubling news.

82.    Despite the highly troubling earnings announcement, on the October 29, 2018 earnings call Defendant McCollum portrayed the problems as mere "bumps in the road" and continued to tout Weatherford's Transformation Plan.  Defendant McCollum stressed that the Transformation Plan is a long-term plan, and short-term struggles are expected, stating "the transformation initiatives were not designed to solve small problems one time and then move on" and that it is "an ongoing process and these positive trends will intensify to deliver even stronger performance results."  McCollum further stated that Weatherford's Transformation Plan was on track, and that the short-term results should not be discouraging because "our experience to date suggests that it takes a few quarters for these improvements to actually hit the P&L statement. As such, I remain confident that we'll see it in the run rate by the end of 2019."

83.    On December 12, 2018, after Weatherford's stock had traded below $1.00 per

share for 30 days, the NYSE issued an official notice of non-compliance with the listing standards of the NYSE.  The Company had six months, subject to certain exceptions, to bring its share price over $1.00 or the NYSE would commence delisting procedures.

84.     In December 2018, after the considerable stock drop in October and the NYSE notice of non-compliance, the Company hired Latham & Watkins LLP ("Latham") to advise the Company on possible contingency plans if the Company's refinancing efforts proved unsuccessful.  Also in December 2018, the Company hired Alvarez & Marsal to begin preparing the necessary documentation as a contingency plan if an in-court restructuring ultimately turned out to be necessary – *i.e.*, if the refinancing efforts failed.

85.     On a February 1, 2019 earnings call, Defendant McCollum reported that the Company was on track to achieve a "$1 billion incremental EBITDA run rate by the end of 2019" and emphasized "we continue to believe that we can deliver on our $1 billion commitment by the end of 2019."  When asked about the possibility of bankruptcy, McCollum – despite the Company having already hired Latham and Alvarez & Marsal to actively structure a bankruptcy plan – responded that "I don't waste a lot of time thinking or planning how to fail," and that "[o]ur energy as a team is a 100 percent focused on working how to succeed."

86.     There is no doubt that McCollum's February 1, 2019 statements were misleading. As noted, at the time Weatherford had already begun preparing for bankruptcy, including pursuing various restructuring options to de-leverage the Company.  Indeed, in its bankruptcy filings the Company has since conceded that despite the Transformation Plan, "the Company continued to face declining revenue and cash flows."  In other words, it was clear that the Transformation Plan could not prevent bankruptcy.

87.     On February 15, 2019, Weatherford filed with the SEC its 2018 Annual Report on

Form 10-K.  The 2018 Form 10-K was signed by Defendants McCollum, Bausch, Awad, Decyk, Gass, Parry, Kalman, King, Macaulay, Minas and Ortiz.

88.     In its 2018 Form 10-K, Weatherford listed as "Risk Factor" that "[w]e may not be able to generate sufficient cash flows to service our indebtedness and may be forced to take actions in order to satisfy our obligations under our indebtedness."  It was misleading for the Management Defendants to issue a warning that Weatherford "may not" be able to generate sufficient cash flows, when the Management Defendants knew, or should have known, that the Company's Transformation Plan had little, if any, chance of success.  Indeed, at the time Weatherford's bankruptcy plan was already being negotiated.

89.     On April 30, 2019, just 60 days before Weatherford commenced its Chapter 11 Proceedings, the Board solicited votes from shareholders (*i.e.*, Class members) for a reverse stock split purportedly intended to keep Weatherford's common stock trading on the New York Stock Exchange and make existing equity more attractive to investors.  Notably, under the Company's 2021 indenture, a delisting from the NYSE would constitute a "fundamental change," and would require the repurchase of approximately $1.3 billion of principal plus accrued interest.

90.     The Board Defendants approved and supported the reverse stock split.  According to its announcement, "[t]he board expects that a reverse stock split of our ordinary shares will increase the market price of our ordinary shares so that we are able to maintain compliance with the New York Stock Exchange minimum bid price listing standard" and the Board asked stockholders to vote in favor of the reverse stock split.

91.     In the April 30, 2019 proxy regarding the reverse stock split proposal and other governance matters, Weatherford's Board dedicated numerous slides to detailing the Company's

"Transformation Success."   Among other detail, the proxy stated that "[w]e have made significant progress with our transformation plan" including realizing benefits of "$400 million on an annualized basis."   The proxy further stated that the Company "expects to achieve our $1 billion incremental EBITDA run rate goal by year-end 2019."

92.     Notably, the Board Defendants failed to disclose to investors that at, the time it announced the proposed reverse stock split, the Company and its advisors were already engaged in restructuring negotiations with *ad hoc* groups holding a substantial portion of the Company's debt.

### F.     Defendants Stop Touting the Transformation and Instead File for Bankruptcy and A Lucrative Management Incentive Plan

93.     Only ten days after the optimism about Weatherford's Transformation Plan and future, the truth was fully revealed.   On May 10, 2019, the Company announced it had entered into the RSA with its Noteholders and would be filing for bankruptcy protection.   As part of the disclosed restructuring plan equity holders would only receive a combined 1% stake in the equity of the post-bankruptcy Company as well as warrants.

94.     As a result of the announcement, on the next trading day Weatherford's common stock price dropped over 85% from its previous close of $0.36 per share on May 10, 2019, to $0.05 per share at close on May 13, 2019.   Trading in the Company's shares was suspended by the NYSE, and the next day, the stock was delisted.   At first, the Company was championing its stock and transformation, then hundreds of millions of dollars in market capitalization were erased overnight.

95.     On July 1, 2019, Weatherford commenced its Chapter 11 Proceedings in the Bankruptcy Court.   The RSA (and Chapter 11 Plan that followed) generally provides for approximately (i) 94% of the New Common Stock to be distributed to the Noteholders, and (ii)

1% of the New Common Stock to be distributed to existing Shareholders.  Both of these recoveries are subject to dilution from up to 5% of New Common Stock issued to management through the Management Incentive Plan.

96.    The Management Incentive Plan is remarkable.  On April 30, 2019, just prior to the bankruptcy filing, the Company's named executive management (including the Management Defendants) held only approximately 0.37% of Weatherford.[2]  However, after confirmation of the Management Incentive Plan, the Company's management will stand to own up to 5% of the fully deleveraged NewCo.

97.    Specifically, the Chapter 11 Plan describes the Management Incentive Plan that "[a]s soon as reasonably practicable after the Effective Date, the Reorganized Company will adopt a management incentive plan, which management incentive plan shall reserve up to 5.0% of the New Common Stock in the Reorganized Company on a fully diluted basis, and which shall be on the terms and conditions (including any and all awards granted thereunder) to be determined at the discretion of the New Board (including, without limitation, with respect to the participants, allocation, timing, and the form and structure of the options, warrants, and/or equity compensation."  It is unclear who precisely is included in "management," but in Bankruptcy Court the Company has claimed it includes "approximately 2,000 employees rather than just management."

98.    In other words, management, including the Management Defendants, is set to get up to 526% more recovery than the Class will receive.  This is in addition to the payments under various bonus and retention programs made by non-Debtor affiliates on the eve of bankruptcy in

---

[2] The 0.37% figure was compiled by aggregating the amount of securities beneficially owned by the Debtors' five named executives from their most recent SEC Forms S-4.  *See* SEC Forms S-4, Weatherford International plc (February 4, 2019; February 7, 2019; June 10, 2019; April 24, 2019).

April and May of 2019.[3]

99.    Moreover, under the Chapter 11 Plan, the Individual Defendants get comprehensive releases, Defendant McCollum keeps his job (including his position on the Board), and the remaining members of the Board can (potentially) interview to keep their Board seats.

100.    The victims are the existing equity holders.

## V.    MISLEADING STATEMENTS AND OMISSIONS

101.    The Management Defendants made or caused to be made numerous misleading statements and omissions of materials facts during the Class Period.

### A.    Defendant's False and Misleading Statements During 2016

102.    For example, on October 26, 2016, Defendant Duroc-Danner stated that "Q3 marked an end and a beginning" for Weatherford, that "Q3 marked the end of the decline for all regions" and that the Company is in "recovery mode."  Duroc-Danner further stated that the quarter was the "first sign of a turnaround" and touted the Company's ongoing efforts to cut costs, claiming that cuts of $1 billion in fixed costs would be "permanent and sustainable" despite projected revenue increases.

103.    The October 26, 2016 statements were materially false and misleading when made.  It was misleading for the Defendant Duroc-Danner to state that Weatherford was in "recovery mode" and improving margins, when at the time these statements were made, Defendants knew, or should have known, that Weatherford's financial condition and prospects

---

[3] On July 22, 2019, an *Ad Hoc* Committee of Weatherford shareholders (the "*Ad Hoc* Committee") filed an Emergency Motion in the Bankruptcy Court for an Order Appointing an Official Committee of Equity Security Holders, arguing, among other things, that the consideration the Chapter 11 Plan provides to shareholders is inadequate. On August 1, 2019, the Debtors and the *Ad Hoc* Committee announced in Bankruptcy Court that they had negotiated an agreement that will purportedly provide better recovery for shareholders, including that the warrants have been extended to four years and the strike price has improved.  However, the terms of the agreement have not been publicly released nor have the terms been provided to ordinary shareholders, including Plaintiff.

were not turning around, and that the Company was inevitably headed for bankruptcy.

104.    Also on October 26, 2016, Weatherford issued its Third Quarter 2016 Form 10-Q, which was signed be Defendants Duroc-Danner and Shivram.  The Third Quarter 2016 Form 10-Q incorporated by referenced Weatherford's Form 10-K for the fiscal year ended December 31, 2015, as filed with the SEC on February 16, 2016.  The 2015 Form 10-K included a list of "risks and uncertainties" that "may cause actual results to be materially different from projected results," which included "our high level of indebtedness and our ability to service our indebtedness."

105.    It was misleading for the Management Defendants' to not correct the statement in Weatherford's 2016 Form 10-K that the Company's debt merely "may" impact its results, when at the time Defendants knew, or should have known, that the Company's debt was significantly impacting the Company and the various recovery efforts had little, if any, chance of preventing the Company from filing for bankruptcy because of its significant debts.

106.    On November 9, 2016, Defendant Duroc-Danner stated that he saw "no remote possibility" that Weatherford wouldn't be able to manage its debt.

107.    Defendant Duroc-Danner's November 9, 2016 statement was materially false and misleading when made.  It was misleading for Defendant Duroc-Danner to state that Weatherford could manage its debt when Defendants knew, or should have known, that the Company's purported turnaround had little, if any, chance of success, and that the Company would not be able to avoid bankruptcy.

108.    The November Offering Documents stated numerous risks relating to Weatherford's business and prospects, including generally that "the price of our ordinary shares could be subject to wide fluctuations."

109.    The November Offering Documents were materially false and misleading when made.  It was misleading for Defendants to merely warn about general and specific risks relating to their business, when Defendants specifically knew, or should have known, that the Company's purported turnaround plan had little, if any, chance of success, and that Weatherford was not going to be able to avoid bankruptcy.

110.    The Offering Documents also incorporated by reference Weatherford's Form 10-K for the fiscal year ended December 31, 2015, as filed with the SEC on February 16, 2016, which included a list of "risks and uncertainties" that "may cause actual results to be materially different from projected results," which included "our high level of indebtedness and our ability to service our indebtedness."

111.    It was misleading for Defendants' to not correct the statement in Weatherford's 2015 Form 10-K that the Company's debt merely "may" impact its results, when at the time Defendants knew, or should have known, that the Company's debt was significantly impacting the Company and the various recovery efforts had little, if any, chance of preventing the Company from filing for bankruptcy because of its significant debts.

**B.    Defendant's False and Misleading Statements During 2017**

112.    On February 2, 2017, Defendants announced Weatherford's Fourth Quarter 2016 earnings results.  On the related earnings call, Defendant Shivram stated that "Weatherford is back," that Weatherford had "not only survived" the industry down cycle, but "transformed the company internally and positioned it well for the multiyear upcycle."  Defendant Shivram further stated that Weatherford's "financial runway, including covenant management, is now clear for the next few years."

113.    Defendants' February 2, 2017 statements were materially false and misleading when made.  It was misleading for Defendant Shivram to state that Weatherford was well

positioned for the upcycle and had a clear financial runway, when Defendant Shivram knew, or should have known, that Weatherford's transformation had little, if any, chance of success and that the Company would not going to be able to avoid bankruptcy.

114.    On February 14, 2017, Weatherford filed its 2016 Annual Report on Form 10-K. The 2016 Form 10-K was signed by Defendants Shivram, Bausch, Awad, Butters, Gass, Kalman, Macaulay, Moses, Ortiz, Parry and Raynes.   In the 2016 Form 10-K, Weatherford and the Management Defendants listed numerous "Risk Factors," including that "[o]ur indebtedness and liabilities could limit cash flow available for our operations, expose us to risks that could adversely affect our business, financial condition and results of operations and impair our ability to satisfy our obligations under the notes."   These Risk Factors were incorporated by reference into Weatherford's Forms 10-Q, each signed by Defendant Bausch, filed on April 28, 2017, August 1, 2017 and November 1, 2017.

115.    The statements in Weatherford's 2016 Form 10-K and Forms 10-Q were materially false and misleading when made.  It was misleading for the Management Defendants to issue a warning that Weatherford's indebtedness merely *could* limit the Company when the Management Defendants knew, or should have known, that Weatherford's purported "recovery" was inadequate and that the Company's debt *would* cause it to file for bankruptcy.

116.    On November 1, 2017, the Management Defendants presented Weatherford's Third Quarter 2017 financial results.   In connection with the announcement, Defendant McCollum announced details regarding Weatherford's $1 billion "Transformation Plan."

117.    Defendants' November 1, 2017 announcement was materially false and misleading when made.  It was misleading for the Management Defendants to hype the Transformation Plan when they knew, or should have known, that the Transformation Plan had

little, if any, chance of success and that Weatherford was headed for bankruptcy.

118.   Later in November 2017, Weatherford announced that it had hired Morgan Stanley to sell certain business units.   In connection with the announcement, Defendant McCollum stated that the sale "coupled with our transformation plans, will lead to leaner organization with lower debt and significantly higher profit margins."

119.   Defendant McCollum's statement was materially false and misleading when made.   It was misleading for Defendant McCollum to state that the Transformation Plan would lead to lower debt and significantly higher profit margins, when Defendant McCollum knew, or should have known, that the Transformation Plan had little, if any, chance of success and that Weatherford would file for bankruptcy protection.

### C.   Defendant's False and Misleading Statements During 2018

120.   Weatherford released its fourth quarter 2017 earnings results on February 2, 2018. In connection with the announcement, Defendant Bausch discussed the Transformation Plan, stating, among other things, that it will lead to "lower debt and improved profit margins."

121.   Defendant Bausch's statement was materially false and misleading when made.   It was misleading for Defendant Bausch to state the Transformation Plan would lower debt and improve margins, when Bausch knew, or should have known, that the Transformation Plan had little, if any, chance of success and that Weatherford's large debt would cause the Company to file for bankruptcy protection.

122.   On February 14, 2018, Weatherford filed its 2017 Annual Report on Form 10-K. The 2017 Form 10-K was signed by Defendants McCollum, Bausch, Awad, Butters, Decyk, Gass, Kalman, King, Macaulay, Moses, Ortiz and Parry.   In the 2017 Form 10-K, Weatherford and the Management Defendants listed numerous "Risk Factors," including that "Our indebtedness and liabilities could limit cash flow available for our operations, expose us to risks

that could adversely affect our business, financial condition and results of operations and impair our ability to satisfy our financial obligations."  The Risk Factors in the 2017 Form 10-K were incorporated by reference in the Forms 10-Q, each signed by Defendant Bausch, dated by May 2, 2018, August 9, 2018 and November 2, 2018.

123.    Weatherford's 2017 Form 10-K and Forms 10-Qs were materially false and misleading when made.  It was misleading for the Management Defendants to issue a warning that Weatherford's indebtedness merely *could* limit the Company when the Management Defendants knew, or should have known, that Weatherford's purported "recovery" was inadequate and that the Company's debt *would* cause it to file for bankruptcy.

124.    Weatherford released its first quarter 2018 financial results on April 24, 2018.  In connection with the announcement, the Management Defendants released an investor presentation advertising the purported benefits of the Transformation Plan.  On the related earnings call, Defendant Bausch stated that that "we are now in the implementation phase of our transformation, driving increased efficiency and effectiveness enabled by standard processes and clear accountability across the entire company.  In the first quarter of 2018, estimated recurring benefits as a result of the transformation were $27 million or $108 million on an annualized basis."

125.    The Management Defendants' April 24, 2018 statements were materially false and misleading when made.  It was misleading for the Management Defendants to tout the benefits of the Transformation Plan and ongoing progress, when the Management Defendants knew, or should have known, that the Transformation Plan had little, if any, chance of success and that Weatherford was headed for bankruptcy.

126.    Weatherford released its second quarter 2018 financial results on July 27, 2018.

In connection with the announcement, the Management Defendants again released an investor presentation advertising the purported benefits of the Transformation Plan.  On the related earnings call, Defendant Bausch stated the Transformation Plan was "continu[ing] to gain momentum" and Defendant McCollum said the plan is "in full force" and that Weatherford now has "tangible evidence of its effects on our bottom line."  Defendant McCollum further stated that "I remain confident that we'll achieve $1 billion in annualized recurring EBITDA improvements by year-end 2019 and cut the debt-to-EBITDA ratio in half by the end of year 2018."

127.    Defendants' July 27, 2018 statements were materially false and misleading when made.  It was misleading for the Management Defendants to tout the benefits of the Transformation Plan and ongoing progress towards the EBITDA and debt goals, when the Management Defendants knew, or should have known, that the Transformation Plan had little, if any, chance of success, and that Weatherford's large debt would cause the Company to file for bankruptcy protection.

128.    Defendant McCollum presented at the Barclays CEO Energy Power Conference on September 5, 2018.  At the conference, Defendant McCollum said he expected Weatherford's full-year earnings before expenses to nearly double from the prior year.  Defendant McCollum further indicated he expected the Company to start generating free cash flow soon and that Weatherford's EBITDA will grow around the mid-teens percent in the third quarter compared to the prior quarter.

129.    Defendant McCollum's September 5, 2018 statements were materially false and misleading when made.  It was misleading for Defendant McCollum to portray Weatherford as turning around financially, when Defendant McCollum knew, or should have known, that the

Transformation Plan had little, if any, chance of success and that Weatherford's large debt would cause the Company to file for bankruptcy protection.

130. On October 29, 2018, Weatherford reported its third quarter 2018 financial results. Despite the partial disclosure of the truth about Weatherford's true financial condition, Defendant McCollum stated that the Transformation Plan was still "ongoing" and had "positive trends." Defendant McCollum further characterized the news as mere "bumps in the road."

131. Defendant McCollum's October 29, 2018 statements were materially false and misleading when made. It was misleading for Defendant McCollum to portray Weatherford's Transformation Plan was having "positive trends" and merely "bumps in the road," when Defendant McCollum knew, or should have known, that the turnaround plan had little, if any, chance of success and that Weatherford's large debt would cause the Company to file for bankruptcy protection.

**D.     Defendant's False and Misleading Statements During 2019**

132. Weatherford announced its 2018 financial results on February 1, 2019. In connection with the announcement, Defendant McCollum reported that the "Company is on track to achieve a $1 billion incremental EBITDA run rate by the end of 2019." When asked about the possibility of bankruptcy, McCollum responded that "I don't waste a lot of time thinking or planning how to fail," and that "[o]ur energy as a team is a 100% focused on working how to succeed."

133. Defendants' February 1, 2019 statements were materially false and misleading when made. It was misleading for Defendant McCollum to state the Transformation Plan was on track, and state they don't spend time on planning for bankruptcy, when the Management Defendants knew, or should have known, that the Transformation Plan was unable to save Weatherford, had already hired bankruptcy advisors, and were in the process of preparing to file

35

Case 4:19-cv-03363   Document 1   Filed on 09/06/19 in TXSD   Page 39 of 50


for bankruptcy protection.

134.    On February 15, 2019, Weatherford filed with the SEC its 2018 Annual Report on Form 10-K.  The 2018 Form 10-K was signed by Defendants McCollum, Bausch, Awad, Decyk, Gass, Parry, Kalman, King, Macaulay, Minas and Ortiz.  In its 2018 Form 10-K, Weatherford listed as a "Risk Factor" that "We may not be able to generate sufficient cash flows to service our indebtedness and may be forced to take actions in order to satisfy our obligations under our indebtedness."

135.    It was misleading for the Management Defendants to issue a warning that Weatherford "may not" be able to generate sufficient cash flows, when the Management Defendants knew, or should have known, that the Company's Transformation Plan had little, if any, chance of success.  Indeed, at the time, Weatherford's bankruptcy plan was already being negotiated.

136.    Weatherford released a proxy on April 30, 2019 in connection with its proposal to have a reverse stock split.  The proxy stated, among other things, that "[w]e have made significant progress with our transformation plan" including realizing benefits of "$400 million on annualized basis."  The proxy further stated that the Company "expects to achieve our $1 billion incremental EBITDA run rate goal by year-end 2019."

137.    Weatherford's April 30, 2019 proxy was materially false and misleading when made.  It was misleading to hype the Transformation Plan and state that the Company expects to achieve its EBITDA goal by year-end 2019 when the Management Defendants were already preparing Weatherford's bankruptcy plan.

## VI.    ADDITIONAL ALLEGATIONS OF SCIENTER

138.    As alleged herein, the Management Defendants acted with scienter since they

knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

139.    As set forth elsewhere herein in detail, the Management Defendants, by virtue of their receipt of information reflecting the true facts regarding Weatherford, their control over, and/or receipt and/or modification of Weatherford's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Weatherford, participated in the fraudulent scheme alleged herein.

## VII.    PRESUMPTION OF RELIANCE

140.    At all relevant times, the market for Weatherford's securities was efficient for the following reasons, among others:

(a)    Weatherford securities met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Weatherford filed periodic reports with the SEC;

(c)    Weatherford regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Weatherford was followed by numerous securities analysts employed by major

37

brokerage firms, including Credit Suisse, Evercore, J.P. Morgan and Tudor, Pickering, Holt, and who wrote reports which were distributed to those brokerage firms' sales force and certain customers.   Each of these reports was publicly available and entered the public market place.

141.   As a result of the foregoing, the market for Weatherford's securities promptly digested current information regarding Weatherford from all publicly available sources and reflected such information in the price of Weatherford's securities.   All purchasers of Weatherford securities during the Class Period suffered similar injury through their purchase of Weatherford securities at artificially inflated prices, and a presumption of reliance applies.

142.   A Class-wide presumption of reliance is also appropriate in this action under the United States Supreme Court holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material fact for which there is a duty to disclose.

## VIII.   INAPPLICABILITY OF THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE

143.   The statutory safe harbor or bespeaks caution doctrine applicable to forward-looking statements under certain circumstances does not apply to any of the false and misleading statements pleaded in this Complaint.   None of the statements complained of herein was a forward-looking statement.   Rather, they were historical statements or statements of purportedly current facts and conditions at the time the statements were made, including statements about Weatherford's business prospects and internal controls.

144.   To the extent that any of the false and misleading statements alleged herein can be construed as forward-looking, those statements were not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ materially from

38

those in the statements.  As set forth above in detail, then-existing facts contradicted the Management Defendants' (and Company's) statements regarding Weatherford's operations, prospects and controls, among others.  Given the then-existing facts contradicting these statements, any generalized risk disclosures made by Weatherford were not sufficient to insulate the Management Defendants from liability for their materially false and misleading statements.

145.    To the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, the Management Defendants are liable for those false forward-looking statements because at the time each of those statements was made, the particular speaker knew that the particular forward-looking statement was false, and the false forward-looking statement was authorized and approved by an executive officer of Weatherford who knew that the statement was false when made.

## IX.    CLASS ACTION ALLEGATIONS

146.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf individuals or entities, excluding Defendants and their affiliates, who: purchased or otherwise acquired securities of Weatherford (i) between October 26, 2016 and May 10, 2019, inclusive, and were damaged thereby, and/or (ii) pursuant or traceable to the Weatherford Equity Offering that closed on or about November 21, 2016, underwritten by Defendant J.P. Morgan Securities LLC.

147.    There are questions of law and fact that are common to the Class, including:

(a)    whether the Management Defendants misrepresented material facts;

(b)    whether the Management Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(c)    whether the prices of Weatherford's securities were artificially inflated;

(d)    whether Defendants are liable as "controlling persons" under §20(a) of the Exchange Act;

39

(e)     whether the Offering Documents were materially false and misleading; and

(f)     whether plaintiff and the other members of the Class were injured as a result of Defendants' misconduct.

148.    Plaintiff's claims are typical of the claims of the other members of the Class, and plaintiff is not subject to any atypical claims or defenses.

149.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

150.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### COUNT I
### For Violations of Section 10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder Against the Management Defendants

151.    Plaintiff repeats, incorporates and realleges each and every allegation contained above as if fully set forth herein.

152.    During the Class Period, the Management Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Weatherford securities at artificially inflated prices.

153.    The Management Defendants:  (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's

securities in an effort to maintain artificially high market prices for Weatherford's securities in violation of Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

154.    The Management Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operation and prospects.

155.    During the Class Period, the Management Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

156.    The Management Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or recklessly disregarded the true facts that were available to them.   The Management Defendants engaged in this misconduct to conceal Weatherford's true condition from the investing public and to support the artificially inflated prices of the Company's securities.

157.    In addition, the Management Defendants are liable under Rule 10b-5 for knowingly failing to correct the other Management Defendants' material misstatements.

158.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Weatherford's securities.  Plaintiff and the Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices for Weatherford's securities had been artificially inflated by Defendants' fraudulent course of conduct.

159.    As a direct and proximate result of the Management Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered economic loss and damages in connection with their respective purchases of the Company's securities during the Class Period as the prior artificial inflation in the price of Weatherford's securities was removed over time.

160.    By virtue of the foregoing, the Management Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II
### For Violations of Section 20(a) of the
### Exchange Act Against the Management Defendants

161.    Plaintiff repeats, incorporates and realleges each and every allegation set forth above (other than disclaimers of fraud claims) as if fully set forth herein.

162.    As alleged above, the Management Defendants each violated Section 10(b) and Rule 10b-5 thereunder by their acts and omissions as alleged in this Complaint.

163.    The Management Defendants acted as controlling persons of Weatherford within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control the materially false and misleading public statements about Weatherford during the Class Period, the Management Defendants had the power and ability to control the actions of Weatherford and its employees.

## COUNT III
### For Violations of Section 20(a) of the
### Exchange Act Against Duroc-Danner, Shivram and Bausch

164.    Plaintiff repeats, incorporates and realleges each and every allegation set forth above (other than disclaimers of fraud claims) as if fully set forth herein.

165.    As alleged above, Defendants Duroc-Danner, Shivram and Bausch acted as a

controlling person of Weatherford within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

166.    On November 16, 2016, Weatherford sold 84.5 million shares in violation of Section 20(A) of the Exchange Act.  At the time of the offering, Weatherford possessed material, non-public information about the future of the Company in violation of Section 20A of the Exchange Act.

167.    By virtue of their status as the CEO, CFO and COO of Weatherford, Defendants Duroc-Danner, Shivram and Bausch had the power and the ability to control the actions of Weatherford.

168.    By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**COUNT IV**
**Against the Director Defendants For Violations of**
**Section 11 of the Securities Act Against Defendant Shivram, Board Defendants, 2016**
**Director Defendants and J.P. Morgan**

169.    Plaintiff repeats, incorporates and realleges each and every allegation set forth above as if fully set forth herein only to the extent that such allegations do not allege fraud, scheme, motive, scienter or intentional conduct by the Defendants to defraud Plaintiff or other members of the Class.  This Section 11 claim does not sound in fraud and Plaintiff expressly disavow and disclaim any allegations of fraud, scheme, motive, scienter or intentional conduct as part of this claim, which does not have scienter or fraudulent intent as required elements.  This count is predicated upon Defendants' liability for making untrue statements and omissions of material fact related to the Equity Offering.

170.    This claim is brought against the Defendant Shivram and the 2016 Director Defendants pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all

proposed Class members who purchased or otherwise acquired Weatherford's common stock in or traceable to the Offering.

171.    At the time of the Offering, the Offering Documents contained untrue statements of material fact, omitted to state facts necessary to make the statements made therein not misleading, and failed to disclose required material information, as set forth above.

172.    Weatherford is the issuer of the common stock sold pursuant to the Offering Documents.  As the issuer of such stock, Weatherford is strictly liable to Plaintiff and the other members of the Class who purchased common stock in or traceable to the Offering for the materially untrue statements and omissions that appeared in or were omitted from the Offering Documents.

173.    The following Defendants were the signatories of the untrue and misleading Offering Documents and are liable for the Offering made pursuant to such Registration Statement:  Defendant Shivram and the 2016 Director Defendants.

174.    These Defendants are unable to establish an affirmative defense based on a reasonable and diligent investigation of the statements.  These Defendants did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Documents were true and not misleading, and that there were no omissions of any material fact.

175.    The underwriter of the Offering was Defendant J.P. Morgan.

176.    Defendant J.P. Morgan is unable to establish an affirmative defense based on a reasonable and diligent investigation of the statements contained in the Offering Documents. Defendant J.P. Morgan did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Documents were true and not misleading,

and that there were no omissions of any material fact.

177.    Plaintiff and other members of the Class purchased Weatherford common stock issued under or traceable to the Offering Documents.

178.    Plaintiff and other members of the Class did not know, or in the exercise of reasonable diligence could not have known, of the untrue statements and omissions of material fact contained in the Offering Documents when they purchased or otherwise acquired the common stock of Weatherford in or traceable to the November Offering.

179.    Plaintiff and other members of the Class who purchased the common stock pursuant to the Offering Documents suffered substantial damages as a result of the untrue statements and omissions of material facts in the Offering Documents, because they either sold these shares at prices below the Equity Offering prices or still held shares as of May 13, 2018.

180.    By reason of the foregoing, the Defendants named in this Count have violated Section 11 of the Securities Act.

**COUNT V**
**Against Duroc-Danner, Shivram, and Bausch**
<u>**For Violations of Section 15 of the Securities Act**</u>

181.    Plaintiff repeats, incorporates and realleges each and every allegation set forth above as if fully set forth herein only to the extent that such allegations do not allege fraud, scheme, motive, scienter or intentional conduct by the Defendants to defraud Plaintiff or members of the Class.

182.    This Count is asserted against Defendants Duroc-Danner, Shivram and Bausch for violations of Section 15 of the Securities Act (15 U.S.C. §77o), on behalf of the Plaintiff and the other Class members who purchased Weatherford stock pursuant to the Offering Documents.

183.    As set forth in Count IV, Defendants Duroc-Danner, Shivram and Bausch are liable pursuant to Section 11 of the Securities Act.  Defendants Duroc-Danner, Shivram and

45

Bausch served as, variously, the CEO, CFO and Controller of Weatherford prior to and at the time of the Equity Offering.  Each of the Defendants named in this count signed the Registration Statement and/or participated in the process that allowed the Equity Offering to be completed. These Defendants, by virtue of their positions as senior officers of the Company, controlled the Company, as well as the content of the Offering Documents, at the time of the Equity Offering. These Defendants had the power and influence and exercised the same to cause Weatherford to engage in the acts described herein.

184.    As a direct and proximate result of wrongful conduct by Defendants Duroc-Danner, Shivram and Bausch, the market price for Weatherford common stock was artificially inflated in the Equity Offering, and Plaintiff and members of the Class suffered damages in connection with the purchase of Weatherford common stock pursuant to the Offering Documents.

185.    This action was brought within one year of the discovery of the untruthfulness of the statements and omissions and within three years of the Equity Offering.

186.    As a result of the foregoing, Defendants Duroc-Danner, Shivram and Bausch are liable under Section 15 of the Securities Act as control persons for the violations of Sections 11. These Defendants are liable to Plaintiff and the other Class members for damages suffered as a result of the Securities Act violations of the persons they controlled.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result

of the Defendants' wrongdoing, in an amount to be proven at trial, including

interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

this action, including attorneys' fees and expert fees; and

D.    Awarding such equitable/injunctive or other further relief (including, but not

limited to, rescission) as the Court may deem just and proper.

## JURY DEMAND

187.    Plaintiff hereby demands a trial by jury.

DATED: September 6, 2019                        Respectfully Submitted,
      Austin, Texas

                                        */s/ Andrew J. Entwistle*
                                        Andrew J. Entwistle
(Texas Bar No. 24038131)
**ENTWISTLE & CAPPUCCI LLP**
500 W. 2nd Street, Suite 1900-16
Austin, Texas 78701
Telephone: (512) 710-5960
aentwistle@entwistle-law.com

Vincent R. Cappucci (*pro hac vice forthcoming*)
Joshua K. Porter (*pro hac vice forthcoming*)
Andrew M. Sher (*pro hac vice forthcoming*)
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, New York 10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272
vcappucci@entwistle-law.com
jporter@entwistle-law.com
asher@entwistle-law.com

*Attorneys for Plaintiff GAMCO Asset*
*Management, Inc. and Proposed Lead Counsel*
*for the Class*